```
CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CRISTEL CRUZ-BANEGAS, <br><br> Defendant. | CASE NO. CR 3:24-CR-577-001 RFL <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Date: October 30, 2025 <br> Time: 2:00 p.m. <br> The Honorable Rita F. Lin |

## I.  INTRODUCTION

The defendant, Cristel Cruz-Banegas, stands before the Court for repeatedly distributing fentanyl in the Bay Area, conduct she continued even after being arrested and released on state charges for the same behavior. PSR ¶¶ 8–10, 11–15, 16–23, 24–30. Her recidivism demonstrates both the danger she poses to the community and the need for a meaningful term of imprisonment. Despite a prior arrest in April 2024 that should have served as a clear warning, Cruz-Banegas returned to selling fentanyl soon after her release, coordinating an additional transaction with an undercover agent through an associate acting on her behalf. PSR ¶¶ 24–30. This repeated and calculated conduct underscores that her involvement in the fentanyl trade was neither fleeting nor peripheral, but rather a deliberate choice carried out for profit. A 42-month custodial sentence, a significant sanction, is necessary to reflect the

seriousness of her conduct, promote respect for the law, and deter future violations.

## II.   PROCEDURAL BACKGROUND

On November 14, 2024, a federal grand jury returned a four-count indictment charging Cruz-Banegas with fentanyl distribution and possession with intent to distribute; co-defendants were charged in a related count. PSR ¶ 1. Cruz-Banegas was arrested on November 19, 2024, detained, and has remained in custody ever since. PSR ¶ 4. On June 12, 2025, Cruz-Banegas pled guilty to Count One (Distribution of Fentanyl, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)). The plea agreement was entered pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, and sentencing is set for October 30, 2025 before this Court. PSR ¶ 2, Dkt. 77.

The plea agreement reflects the parties' Guidelines calculations of Base Offense Level 30, minus 3 levels for acceptance, and 2 additional levels under §4C1.1 (Zero-Point Offender), for a Total Offense Level 25; the government agreed to recommend no more than 48 months absent a breach of this agreement. PSR ¶ 3.

Earlier this year, co-defendant Jessy Banegas-Barahona pled guilty and was sentenced to 18 months; co-defendant Cesia Ramirez-Barahona has also pled guilty and is pending sentencing. PSR ¶¶ 5–6.

## III.   STATEMENT OF FACTS

### A.   Undercover Contact and February 29, 2024 Controlled Buy.

On February 27, 2024, a DEA undercover (UC) received the phone number of a Bay Area drug dealer known as "Daniela," later identified as Cruz-Banegas, from an FBI confidential source and began arranging a narcotics deal. PSR ¶ 8. On February 28, Cruz-Banegas confirmed a fentanyl sale for the next day at 86th Avenue in Oakland, agreeing on $500/oz for four ounces of fentanyl. PSR ¶ 9. On February 29, Cruz-Banegas arrived in a white Honda, entered the UC's vehicle, produced approximately four baggies containing fentanyl, and exchanged the baggies for $2,000; the drugs later tested positive as 111.6 net grams of fentanyl. PSR ¶ 10.

### B.   April 16, 2024 SFPD Encounter and Seizures.

Late on April 16, 2024, San Francisco Police Department officers patrolling near 30 Larkin Street in San Francisco observed Cruz-Banegas crouched near a vehicle with a clear bag of white

substances and a black shopping bag; as officers approached, she placed the suspected drugs in the bag and attempted to walk away. PSR ¶ 11. Officers detained her and observed, in plain view, a box of sandwich bags and suspected narcotics in the black bag, with additional suspected narcotics inside. PSR ¶ 12. Cruz-Banegas first identified herself to the police as Alondra Artiaga-Medina; post-*Miranda*, she said she immigrated from Honduras about five years earlier, started selling narcotics about six months prior, worked seven days a week, and made $5,000–$10,000 per day selling fentanyl, methamphetamine, cocaine, and pills, while using only marijuana herself. PSR ¶ 13.

Lab testing confirmed 230 grams fentanyl, 80.31 grams heroin, 5.23 grams cocaine base, 17.89 grams cocaine, and 92.61 grams methamphetamine were seized from Cruz-Banegas that evening. PSR ¶ 14. Cruz-Banegas was charged locally and released on home detention in June of 2024. PSR ¶ 15.

    **C.**    **April 22, 2024 Controlled Buy via the "1603" Number.**

On April 21, 2024, a DEA UC again contacted Cruz-Banegas to arrange a fentanyl deal; unaware of her SFPD arrest, agents later dealt with a user of a phone ending "1603," who claimed to be Cruz-Banegas and confirmed a sale for the following day. PSR ¶ 16. On April 22, the UC and the 1603 user confirmed $500/oz for eight ounces and set the meet near Dowling Blvd. in San Leandro. PSR ¶ 17. The UC arrived and, after coordination, observed a black sedan arrive with two women who exited and approached, later identified as Cesia Ramirez-Barahona and Jessy Banegas-Barahona. PSR ¶¶ 18–20. Ramirez-Barahona told the UC that her "sister," Cruz-Banegas, had been arrested about a week earlier and confirmed she had taken over for Cruz-Banegas. PSR ¶ 21. Ramirez-Barahona produced a white plastic bag with multiple baggies of suspected fentanyl, stated each bag contained roughly two ounces, and accepted the UC's money before both women departed. PSR ¶ 22. DEA lab analysis confirmed that the purchased drugs were in fact fentanyl (with 21% purity), 232 grams in total. PSR ¶ 23.

    **D.**    **October 17, 2024 Controlled Buy and Link to Cruz-Banegas.**

On October 16, 2024, the UC called the 1603 number to again set up a fentanyl deal; this time, Cruz-Banegas answered and confirmed she could conduct the transaction the next day. PSR ¶ 24. On October 17, the UC coordinated price and quantity at $700/oz for eight ounces of fentanyl and arranged to meet near 82nd and D Street in Oakland. PSR ¶ 25. After arrival, the UC spoke again with Cruz-Banegas, who said she would arrive shortly – agents recognized Cruz-Banegas' voice from the prior

controlled buy in February. PSR ¶ 26. A male, later identified as Allen Pacheco-Padilla, then coordinated with the UC on the phone and redirected the meet to California Street in Oakland. PSR ¶ 27. Pacheco-Padilla delivered a clear bag of white powder to the UC for $5,600, then, when the UC asked for more drugs, Pacheco-Padilla shortly returned with an additional two ounces for $1,300. PSR ¶ 29. During the transaction, Pacheco-Padilla explained that the 1603 number belonged to Cruz-Banegas and that she had dispatched him to conduct the drug deal as a result of her recent arrest. *Id*. DEA analysis confirmed that the drugs sold that day were 280 grams of fentanyl. PSR ¶ 30.

### E. Search and Seizure on November 19, 2024.

On November 19, 2024, agents executed a federal search warrant at Cruz-Banegas' identified residence on 39th Avenue in Oakland. PSR ¶ 31. During the execution of that warrant, agents observed a gray Honda associated with Cruz-Banegas leave the residence, driven by Pacheco-Padilla, who fled from a traffic stop before being located; a search of his person recovered a small baggie of crystalline substance. PSR ¶¶ 31–32. The residential search located Cruz-Banegas, among others, along with approximately 2.7 kilograms of fentanyl, a black scale, a Glock handgun, an airsoft pistol, U.S. currency, and multiple cell phones. PSR ¶ 33.

### F. Acceptance of Responsibility.

While in custody, Cruz-Banegas submitted a written acceptance statement, through a certified Spanish interpreter, expressing remorse, acknowledging fentanyl as "poison," describing rehabilitative efforts (including Freedom Braiders, jail work assignments, and helping others), and apologizing to the Court and community. PSR ¶ 36.

## IV. SENTENCING GUIDELINES CALCULATIONS

The parties agree that the Base Offense Level is 30 under U.S.S.G. §§ 2D1.1(a)(5) and (c)(5), based on Cruz-Banegas being responsible for more than 1,000 kg but less than 3,000 kg of converted drug weight. PSR ¶ 38.

There are no specific offense characteristics or role/obstruction adjustments. PSR ¶¶ 39–42. Cruz-Banegas qualifies as a Zero-Point Offender under §4C1.1 (-2) and should receive a three-level reduction for acceptance under §3E1.1 (-3), for a Total Offense Level 25. PSR ¶¶ 44–47.

With CHC I, the advisory range is 57–71 months. PSR ¶ 85. The plea agreement provides that

1  the government will recommend no more than 48 months, absent a breach of the terms of the agreement.
2  PSR ¶ 3.

3      **A.**    **Applicable Law.**

4      The Court must impose a sentence sufficient, but not greater than necessary, to reflect the
5  seriousness of the offense, deter others from committing similar crimes, protect the public from the
6  defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984,
7  991 (9th Cir. 2008). Section 3553 sets forth several factors that the Court must consider in determining
8  a just sentence: (1) the nature and circumstances of the offense and the defendant's history and
9  characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines
10 range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing
11 disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a);
12 *Carty,* 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v.*
13 *United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough
14 approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States,* 551
15 U.S. 338, 350 (2007).

16     **B.**    **Section 3553(a) Analysis.**

17     The factors set forth in 18 U.S.C. § 3553(a) support a substantial custodial sentence. The offense
18 was serious: Cruz-Banegas engaged in repeated fentanyl transactions across several months, personally
19 selling to an undercover agent in February 2024 and again coordinating further sales through an
20 associate in October 2024, all while apparently maintaining access to kilogram-level quantities of
21 fentanyl at her residence. PSR ¶¶ 8–10, 16–23, 24–30, 33. Her conduct was deliberate, commercial,
22 and persistent, demonstrating that she was not a peripheral courier but an active participant in a
23 distribution network responsible for introducing large amounts of a deadly opioid into Bay Area
24 communities. The scope and frequency of her drug dealing warrant a significant term of imprisonment
25 to reflect the seriousness of the offense, promote respect for the law, and deter others who might view
26 the sale of fentanyl as a quick or low risk means of income.

27     Additionally, Cruz-Banegas' willingness to return immediately to drug trafficking after her San
28 Francisco state arrest, and subsequent release, demonstrates a troubling pattern of recidivism and

disregard for the law. This was not a single lapse in judgment, but an entrenched criminal practice carried out for profit despite direct exposure to law enforcement consequences. Such conduct shows that prior intervention failed to deter her and underscores the need for a meaningful custodial term to protect the public and promote respect for the law.

At the same time, the defendant's personal history and characteristics mitigate, though they do not excuse, her conduct. She has no prior criminal convictions and qualifies as a zero-point offender. PSR ¶¶ 44, 48–51. Her background is marked by severe trauma, abuse, violence, poverty, and displacement. And, it is clear that this difficult background forced her path to the United States and ultimately her poor choices. PSR ¶¶ 55–75. Additionally, while in custody, she has taken meaningful steps toward rehabilitation, including participation in the Freedom Braiders program, consistent jail employment, and efforts to learn English. PSR ¶ 68. These efforts reflect genuine remorse and a capacity for change, as also expressed in her written acceptance statement. PSR ¶ 36. The recommended sentence should acknowledge that progress while still ensuring adequate deterrence and protection of the public.

In balancing these considerations, a 42-month term achieves the purposes of sentencing without imposing punishment greater than necessary. It accounts for the gravity of distributing fentanyl on multiple occasions and for the quantities involved, yet recognizes the defendant's acceptance of responsibility and her limited criminal history. The proposed sentence also aligns with national sentencing patterns for similarly situated fentanyl offenders (average and median sentences of roughly 41–42 months for offense level 25, criminal history I), thereby avoiding unwarranted disparity. PSR ¶ 101.

In short, a 42-month custodial sentence, followed by three years of supervised release, appropriately balances the need for deterrence and accountability with the defendant's demonstrated potential for rehabilitation and her commitment to rebuilding her life once her sentence is complete.

//

//

//

## V. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Cruz-Banegas to a sentence of 42 months of imprisonment. The government also requests that the Court impose a three-year term of supervised release, with each of the terms and conditions recommended by U.S. Probation.

DATED: October 23, 2025                                  Respectfully submitted,

                                                         CRAIG H. MISSAKIAN
                                                         United States Attorney

                                                          /s/
                                                         CHARLES F. BISESTO
                                                         Assistant United States Attorney